# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: _____-CV-_____

NORTH ATLANTIC OPERATING COMPANY, INC.; NATIONAL TOBACCO COMPANY, L.P.; and BBK TOBACCO & FOODS, LLP, D.B.A. HBI INTERNATIONAL,

        Plaintiff,

 v.

HAMMAD ENTERPRISES INC.; AMJAD HAMMAD; FL 5019 LLC; CHILOGISTICS LLC; JOHN DOE 1, A.K.A. IGNACIO/EGNACIO; JOHN DOE 2, A.K.A. MARCELAS; JOHN DOE 3, A.K.A. HERMAN; and JOHN DOES 4 thru 10, inclusive,

        Defendants.

**JURY TRIAL DEMANDED**

~~Sealed~~

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116 AND L.R. 5.4(b)**

FILED BY _IS_ D.C.

**JAN 23 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## <u>COMPLAINT</u>

 Plaintiffs North Atlantic Operating Company, Inc. ("NAOC"), and National Tobacco Company, L.P. ("NTC") (together, "North Atlantic"), and Plaintiff BBK Tobacco & Foods, LLP, d.b.a. HBI International ("HBI") (together, "Plaintiffs"), by and through their undersigned attorneys, as and for their Complaint against Defendants Hammad Enterprises Inc., d.b.a. Community Food Store #9, f.k.a. Community Market #9 and Community Food Store; Amjad Hammad; FL 5019 LLC, d.b.a. HMD, HamMart, Hammad, Hammad Enterprise & Wholesale, and Hammad Wholesale; Chilogistics LLC; John Doe 1, a.k.a. Ignacio/Engacio; John Doe 2, a.k.a. Marcelas; John Doe 3, a.k.a. Herman, and John Does 4 thru 10 inclusive (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      This is an anti-counterfeiting action against those who make, buy, sell, or otherwise distribute counterfeit ZIG-ZAG® and RAW® Smoking Papers (defined as rolling papers and cigarette paper products):



**ZIG-ZAG® Orange Cigarette Papers          RAW® Cones**

2.      Plaintiffs are the exclusive U.S. distributors of all high-quality authentic ZIG-ZAG® and RAW® Smoking Papers, and they respectively own, or have nationwide exclusive rights to use, the registered and common-law trademarks, common-law trade dresses, and copyrights that appear on all authentic ZIG-ZAG® and RAW® Smoking Papers authorized for sale in the United States.

3.      In October and November 2018, Plaintiffs made a series of controlled purchases (known as controlled buys) from Defendants at their warehouse at 129 NW 25th Terrace, Bay-C, Fort Lauderdale, FL 33311 (the "Warehouse"). The controlled buys confirmed that Defendants are buying and re-selling counterfeit ZIG-ZAG® and RAW® Smoking Papers, as if they were authentic products.

4.      Plaintiffs are not Defendants' only customers. Defendants' counterfeiting is on a much larger scale.

5.      There are distinct, observable differences between counterfeit and authentic ZIG-ZAG® and RAW® Smoking Papers. Whereas Plaintiffs' authentic papers are made of high-quality ingredients and subjected to strict, exacting quality control standards, Defendants' Counterfeit Products (defined below) appear cheap; degrade quickly; are made of unknown ingredients of unknown origin; and are not subject to any known quality control standards.

6.      Defendants' counterfeiting appears willful, as not only are the Counterfeit Products bought and sold at below-market prices, they travel through unauthorized distribution channels.

7.      Because of the counterfeiting, Plaintiffs have irretrievably lost the ability to control the quality of products sold under their respective trademarks, other source identifiers, and brands.

8.      Plaintiffs jointly bring this lawsuit for (a) trademark infringement, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); and (b) trademark and trade dress infringement, false designation of origin, and unfair competition, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). Additionally, North Atlantic brings a separate claim for copyright infringement, in violation of the Copyright Act of 1976 (17 U.S.C. §§ 101 et seq.).

## THE PARTIES

9.      NAOC is a Delaware corporation with an office and principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

10.     NTC is a Delaware limited partnership with an office and principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

11.     NAOC and NTC are the exclusive U.S. licensees and distributors of ZIG-ZAG® cigarette paper products; are the exclusive U.S. users of the ZIG-ZAG® Trademarks; are the owners and exclusive U.S. users of the NAOC® Trademarks and NAOC© Copyright; have exclusively and continuously used the distinctive, non-functional ZIG-ZAG® Orange Trade Dress on and in connection with authentic ZIG-ZAG® Orange; and have the right to sue civilly to protect their rights.

12.     HBI is an Arizona limited liability partnership with an address at 3401 West Papago Street, Phoenix, Arizona 85009.

13.     HBI owns and exclusively distributes RAW® rolling papers; is the owner of the RAW® Trademarks and RAW® Trade Dress; has exclusively and continuously used the distinctive, non-functional RAW® Trade Dress on and in connection with authentic RAW® rolling papers; and has the right to sue civilly to protect its rights.

14.     Defendant Hammad Enterprises Inc. is a Florida corporation with addresses at 1130 W. Atlantic Avenue, Delray Beach, FL 33444, and 129 NW 25th Terrace Bay-C, Fort Lauderdale, FL 33311 ("Hammad Enterprises").

15.     Hammad Enterprises is involved in the purchase, sale, and/or other distribution of counterfeit/infringing ZIG-ZAG® and RAW® Smoking Papers.

16.     Upon information and belief, Defendant Amjad Hammad is a citizen of Florida, and he owns and/or operates Hammad Enterprises, Chilogistics LLC, and FL 5019 LLC.

17.     Upon information and belief, Defendant Hammad is involved in the purchase, sale, and/or other distribution of counterfeit/infringing ZIG-ZAG® and RAW® Smoking Papers.

18.     Upon information and belief, Defendant Hammad uses the entity Defendants Hammad Enterprises, Chilogistics LLC, and FL 5019 LLC as a vehicle for his counterfeiting.

19.    Defendant FL 5019 LLC is a Florida limited liability company with an address at 129 NW 25th Terrace Bay-C, Fort Lauderdale, FL 3331, with numerous "d.b.a.'s" including HMD, HamMart, Hammad, Hammed Enterprise & Wholesale, and Hammad Wholsale ("FL 5019").

20.    FL 5019 is involved in the purchase, sale, and/or other distribution of counterfeit/infringing ZIG-ZAG® and RAW® Smoking Papers.

21.    Defendant Chilogistics LLC is a Florida limited liability company with an address at 129 NW 25th Terrace Bay-C, Fort Lauderdale, FL 33311 ("Chilogistics").

22.    Chilogistics is involved in the purchase, sale, and/or other distribution of counterfeit/infringing ZIG-ZAG® and RAW® Smoking Papers.

23.    Upon information and belief, Defendant John Doe 1, aka Ignacio or Egnacio, is a citizen of Florida, and he manages/works at Hammad Enterprises, Chilogistics, and/or FL 5019 LLC.

24.    John Doe 1 is involved in the purchase, sale, and/or other distribution of counterfeit/infringing ZIG-ZAG® and RAW® Smoking Papers.

25.    Upon information and belief, Defendant John Doe 2, aka Marcelas, is a citizen of Florida, and he manages/works at Hammad Enterprises, Chilogistics, and/or FL 5019 LLC.

26.    John Doe 2 is involved in the purchase, sale, and/or other distribution of counterfeit/infringing ZIG-ZAG® and RAW® Smoking Papers.

27.    Upon information and belief, Defendant John Doe 3, aka Herman, is a citizen of Florida, and he is a cashier/works at Hammad Enterprises, Chilogistics, and/or FL 5019 LLC.

28.    John Doe 3 is involved in the purchase, sale, and/or other distribution of counterfeit/infringing ZIG-ZAG® and RAW® Smoking Papers.

29.     Upon information and belief, Defendants conspired to unlawfully traffic in counterfeit ZIG-ZAG® and RAW® Smoking Papers, and to conceal evidence of their counterfeiting.

30.     Upon information and belief, additional John Doe Defendants aid, abet, enable, and assist Defendants in their counterfeiting/conspiracy to buy, sell, and/or otherwise distribute counterfeit ZIG-ZAG® and RAW® Smoking Papers, and to conceal evidence of the conspiracy and the counterfeiting. Plaintiffs will amend/seek leave to amend the Complaint to add these parties by their true names and identities, if/when they more fully determine same.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over all claims in this Complaint under 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.

32.     Personal jurisdiction is proper in Florida, because each Defendant resides or is domiciled here; has a registered address and principal place of business here; or has had continuous, systematic, and substantial contacts in Florida, including doing business in Florida, being registered to do business in Florida, and directing sales of counterfeit ZIG-ZAG® and RAW® Smoking Papers to Florida consumers *via* Florida-based businesses. Additionally, Plaintiffs have suffered, and are suffering, economic and irreparable harm in Florida, directly and indirectly caused by Defendants' purchase, sale, and/or other distribution of counterfeit ZIG-ZAG® and RAW® Smoking Papers.

33.     Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a majority of Defendants reside here and a substantial portion of the events giving rise to Plaintiffs' claims occurred here, namely, Defendants' knowing, willful, and intentional purchase, sale, and/or other distribution of counterfeit ZIG-ZAG® and RAW® Smoking Papers.

## STATEMENT OF FACTS

### North Atlantic's ZIG-ZAG® Products and Relevant Intellectual Property

34.     North Atlantic and its predecessor-in-interest have continuously and exclusively distributed all authentic ZIG-ZAG® cigarette paper products in the United States since 1938.

35.     North Atlantic's authentic ZIG-ZAG® cigarette paper products are manufactured in, and imported from, France, using the highest quality ingredients, after which, North Atlantic subjects them to strict and exacting quality control standards.

36.     If the products pass North Atlantic's inspection, they are sold directly to North

Atlantic's "direct accounts" (for the most part, large variety wholesale distributors throughout the United States). North Atlantic's direct accounts then distribute the products to retailers, and in some cases, to other wholesale distributors. Ultimately, the products are purchased and used by U.S. consumers at retail stores such as convenience stores, party stores, smoke shops, and like outlets.

37.      Authentic ZIG-ZAG® cigarette paper products come in several varieties which differ in thickness, paper quality, size, and like qualities, including the popular ZIG-ZAG® Orange (booklet shown below):



38.      North Atlantic and its predecessor in interest have sold and distributed ZIG-ZAG® cigarette paper products in the United States exclusively for over 80 years, and because of North Atlantic's investments, ZIG-ZAG® cigarette paper products, the ZIG-ZAG® Trademarks, and the NAOC® Trademarks (defined below) have become famous.

39.      The following "ZIG-ZAG® Trademarks" are registered on the Principal Register in the USPTO, have become incontestable, and appear alone or in combination on all authentic ZIG-ZAG® cigarette paper products distributed by North Atlantic in the United States, including ZIG-ZAG® Orange:

      a.   U.S. Registration No. 610530 for ZIG-ZAG (Stylized);



   b.   U.S. Registration No. 1127946 for ZIG-ZAG (Word Mark);

## ZIG ZAG

   c.   U.S. Registration No. 2169540 for the Smoking Man Design (Circle Border);



   d.   U.S. Registration No. 2169549 for the Smoking Man Design (No Border);



(true and accurate copies of the records from the USPTO denoting the current status of the federal trademark registrations for the ZIG-ZAG® Trademarks are annexed hereto as <u>Exhibit A</u>).

   40.    Per an exclusive agreement with the registrant, French company Bolloré, S.A., North Atlantic has the exclusive rights to distribute cigarette paper products bearing the ZIG-ZAG® Trademarks in the United States. The same agreement grants North Atlantic the right to sue civilly to protect its rights, including the right to sue counterfeiters.

   41.    The ZIG-ZAG® Trademarks have been used continuously and exclusively by North Atlantic and its predecessor in interest on, and in connection with, superior quality

cigarette paper products in the United States.

42.     The following registered "NAOC® Trademarks" also appear on the Principal

Register in the USPTO, are incontestable, and appear alone or in combination on all authentic

ZIG-ZAG® cigarette paper products distributed by North Atlantic in the United States, including

ZIG-ZAG® Orange, and are owned by North Atlantic:

a.  U.S. Registration Nos. 2664694 and 2664695 for NORTH ATLANTIC
    OPERATING COMPANY INC. and Gear Design:



b.  U.S. Registration Nos. 2610473 and 2635446 for NORTH ATLANTIC
    OPERATING COMPANY (Word Mark):

**NORTH ATLANTIC OPERATING COMPANY**

(true and accurate copies of the records from the USPTO denoting the current status of the

federal trademark registrations for the NAOC® Trademarks are annexed hereto as <u>Exhibit B</u>).

43.   The ZIG-ZAG® and NAOC® Trademarks have appeared continuously on all authentic ZIG-ZAG® Orange distributed/sold by North Atlantic in the United States.

44.   Because of its tremendous sales history, and because of its exclusive, lengthy, and extensive use of the ZIG-ZAG® and NAOC® Trademarks on goods of superior quality, North Atlantic has developed substantial goodwill and a strong reputation as the exclusive U.S. distributor of authentic ZIG-ZAG® Orange, and U.S. consumers have come to associate ZIG-ZAG® Orange exclusively with North Atlantic.

45.   North Atlantic also owns a federal copyright registration for the visual material/computer graphic titled, "North Atlantic Operating Company, Inc." ("NAOC© Copyright") (Exhibit C contains a true and accurate copy of the U.S. copyright registration certificate).

46.   Currently, and at all relevant times, North Atlantic has owned all rights, title, and interest in and to the NAOC© Copyright, which appears with the ZIG-ZAG® and NAOC® Trademarks on all authentic ZIG-ZAG® cigarette papers, including ZIG-ZAG® Orange, distributed by North Atlantic in the United States.

47.   North Atlantic's product packaging for ZIG-ZAG® Orange is also highly distinctive and legally protectable.

48.   As illustrated below, the packaging for authentic ZIG-ZAG® Orange cigarette paper products and contains non-functional design elements featuring: (a) the ZIG-ZAG® and NAOC® Trademarks; (b) the NAOC© Copyright; (c) gold-fill lettering and design elements; (d) French phrases such as "Qualite Superieure" and "Braunstein Freres France;" and (e) truthful statements that such products are "Made in France" or "Imported French," and are "Distributed by North Atlantic Operating Company, Inc.":

11

| Booklet (inside) | Booklet (cover) |
| --- | --- |



(ZIG-ZAG® Trademarks, including ZIG-ZAG® (Stylized), ZIG-ZAG® (Word Mark) and Smoking Man Design (Circle Border and No Circle Border); the NAOC® Trademarks, including the NORTH ATLANTIC OPERATING COMPANY, INC. and Gear Design and the NORTH ATLANTIC OPERATING COMPANY (Word Mark); and the NAOC© Copyright).

| Carton (top view) | Carton (side view) |
| --- | --- |



(together, the "ZIG-ZAG® Orange Trade Dress") Exhibit D contains 8 ½" x 11" versions of the above photographs.

49.     Currently, and at all relevant times, North Atlantic has used the ZIG-ZAG®

Orange Trade Dress in commerce in the United States as a source identifier, and U.S. consumers in fact recognize it as a source identifier associated with North Atlantic, because of North Atlantic's lengthy, exclusive, and continuous use of the ZIG-ZAG® Orange Trade Dress in connection with ZIG-ZAG® orange.

50.     Each element, and the overall look-and-feel of the ZIG-ZAG® Orange Trade Dress is arbitrary, non-functional, and distinctive.

51.     For years, North Atlantic has exclusively used the ZIG-ZAG® Orange Trade Dress on and in connection with superior-quality goods, *i.e.*, authentic ZIG-ZAG® Orange.

52.     The ZIG-ZAG® Orange Trade Dress has become distinctive over time through the acquisition of secondary meaning.

53.     Upon information and belief, U.S. consumers who see the ZIG-ZAG® Orange Trade Dress instantly associate it with North Atlantic and no other source.

### HBI's RAW® Products and Relevant Intellectual Property

54.     HBI designs, manufactures, imports, markets, and sells "RAW"-brand smoking products and accessories, including RAW® rolling papers, which are used by consumers who prefer to "roll their own" cigarettes.

55.     HBI's authentic RAW® rolling papers are exclusively manufactured, and imported from, Alcoy, Spain, after which HBI subjects them to strict and exacting quality control standards.

56.     If authentic RAW® rolling papers meet with HBI's high standards, then HBI distributes them to wholesale stores and retailers throughout the United States. The retail stores, in turn, sell RAW® rolling papers to consumers.

57.    HBI makes and sells RAW® rolling papers in several varieties, which differ in thickness, composition of paper, size, and the like.

58.    One variety of RAW® rolling papers is the popular RAW® 1 ¼ Size Cones, which HBI sells in sells in "Classic" and "Organic" varieties, with 6 cones per pack, and 32 packs per box ("RAW® Cones").

59.    Authentic RAW® Cones are:

    a.   Made in Alcoy, Spain, at one of the world's oldest cigarette paper factories;

    b.   Made from high-quality "raw" ingredients (such as hemp or wood pulp); and

    c.   Made with minimal processing.

60.    HBI has been manufacturing, selling, marketing, promoting, and distributing high-quality authentic RAW® rolling papers, including RAW® Cones, for over a decade.

61.    Because of HBI's investments in manufacturing, sales, marketing, and promotion, and its tremendous sales history, the RAW® rolling papers, RAW® Cones, RAW brand, and RAW® Trademarks (defined below) have become famous.

62.    The following registered "RAW® Trademarks" appear on the Principal Register in the United States Patent and Trademark Office ("USPTO"), and appear alone or in combination on all authentic RAW® rolling papers distributed by HBI, including RAW® Cones:

    a.   U.S. Registration No. 2989221 for RAW (word mark);

# RAW

    b.   U.S. Registration No. 4412202 for RAW (word mark);

# RAW

    c.   U.S. Registration No. 4325822 for RAW ARTESANO (word mark);

14

# RAW ARTESANO

    d.  U.S. Registration No. 4647824 for RAW ORGANIC HEMP AUTHENTIC

        PUREST NATURAL HEMP FIBERS UNREFINED RAY NATURAL

        UNREFINED HEMP ROLLING PAPERS (design mark);



(true and accurate copies of the records from the USPTO denoting the current status of the federal trademark registrations for the RAW® Trademarks are annexed hereto as Exhibit E).

      63.    The RAW® Trademarks have been continuously and exclusively used by HBI on, and in connection with, superior quality rolling paper products and smoking accessories, including RAW® Cones.

      64.    Because of HBI's sales history, and other factors, HBI has developed substantial goodwill and a reputation among U.S. consumers as the exclusive original source of all high-quality RAW® rolling papers and smoking accessories in the United States, and HBI has become known, nationwide, as the exclusive and only source of authentic RAW® smoking papers, including RAW® Cones.

      65.    HBI's product packaging is distinctive and legally protected.

      66.    As illustrated by the photographs at Exhibit F, the packaging for authentic RAW® Cones, and similar products, features design elements such as: (i) on the box, the use of

the colors red, brown, and tan; one or more of the RAW® Trademarks; the term "RAW," depicted in large, red, stylized font, set at an angle in the center of the packaging design and having a piece of twine wrapped about the same; to the right of the term "RAW," a description of the paper size and variety (CONE), depicted in red font/coloring with a red outline about the same; to the left of the term "RAW," a brown-tone circular element with a lighter colored center, containing the terms "AUTHENTIC" and "UNREFINED" in tan font within the brown-tone outer ring, and either the term "PUREST NATURAL FIBERS" (on the Classic variety) or the term "PUREST NATURAL HEMP FIBERS" (on the Organic variety) in brown font within the ring's center;  above the term "RAW," either the term "CLASSIC" or "ORGANIC HEMP" inside a brown rectangle that exposes the underlying tan color for the letters; below the term "RAW," the term "NATURAL UNREFINED ROLLING PAPERS" (on the Classic variety) or the term "NATURAL UNREFINED HEMP ROLLING PAPERS" (on the Organic variety) in brown font; overlaying the aforementioned design elements, a raster image (i.e., photograph) of twine in brown and tan coloring, crossing the packaging vertically and horizontally, with a knot in the center of the packaging design; and (ii) on the outer RAW® Cone packaging, the foregoing design elements on a tapered cone-shaped package that is wider at the top than at the bottom (all of the foregoing elements, together with the overall look-and-feel of the packaging, the "RAW® Trade Dress").

| RAW® Cone Packaging (inside box) | RAW® Cone Packaging (outside box) |
|---|---|



RAW® Trademarks and Unregistered RAW® Trade Dress depicted on RAW® Cone packaging

67.     Currently, and at all relevant times, HBI has used the RAW® Trade Dress for RAW® Cones, nationwide, in commerce in the United States.

68.     The elements featured in the RAW® Trade Dress are arbitrary, non-functional, and distinctive, as is the overall look-and-feel of the packaging.

69.     The RAW® Trade Dress is consulted when designing RAW-brand products other than RAW® Cones, such as cigar and cigarette rolling trays, giving those products an equally distinctive look and feel, and making the connection with the RAW brand/HBI clear to consumers.

70.     The RAW® Trade Dress and constituent design elements have been extensively and continuously used by HBI; have been and are used nationwide on products including RAW® Cones; are inherently distinctive and instantly recognizable to consumers as source identifiers; and have become even more distinctive through the acquisition of secondary meaning from

HBI's long-standing, nationwide use of them in connection with Smoking Papers of superior quality.

71.     Upon information and belief, U.S. consumers who see the RAW® Trade Dress immediately associate it with HBI as a source identifier/do not associate it with any other source.

### Defendants' Willful Counterfeiting And Infringement Of Plaintiffs' RAW® And ZIG-ZAG® Smoking Papers

72.     Defendants are engaged in a widespread scheme of unlawfully acquiring and selling, or otherwise distributing, counterfeit ZIG-ZAG® and RAW® Smoking Products, namely, counterfeit ZIG-ZAG® Orange and counterfeit RAW® Cones (the "Counterfeit Products").

73.     Defendants' scheme counts on:

    a.  Look-alike ZIG-ZAG® Orange in counterfeit packaging containing counterfeit versions of the ZIG-ZAG® and NAOC® Trademarks, NAOC© Copyright, and the ZIG-ZAG® Orange Trade Dress, and which creates the false commercial impression that the counterfeit products are North Atlantic's authentic ZIG-ZAG® Orange cigarette paper products, when they are not; and

    b.  Look-alike RAW® Cones in counterfeit packaging containing counterfeit versions of the RAW® Trademarks, and RAW® Trade Dress, creating the false commercial impression that the counterfeit products are HBI's authentic RAW® Cones, when they are not.

74.     Defendants' Counterfeit Products do not originate with the Plaintiffs; are not made with Plaintiffs' permission, or under any license(s) from Plaintiffs; and are not made with any authority to use Plaintiffs' respective trademarks, copyrights, or trade dresses (*i.e.*, the RAW® Trademarks, ZIG-ZAG® Trademarks, NAOC® Trademarks, NAOC© Copyright,

RAW® Trade Dress, and/or ZIG-ZAG® Orange Trade Dress).

75.    Defendants' Counterfeit Products differ from Plaintiffs' authentic ZIG-ZAG® and RAW® Smoking Papers in material ways, including and without limitation:

     a.   Size and/or dimension differences;

     b.   Inferior-quality printing, paper, and packaging; and

     c.   Inconsistent burn patterns and rates, which potentially ruin consumers' smoking experiences.

76.    Plaintiffs' authentic ZIG-ZAG® and RAW® Smoking Papers are subject to strict and exacting quality control standards, and are stored and sold under known and verifiable conditions.

77.    By contrast, Defendants' Counterfeit Products are not subject to any known quality control standards, and Plaintiffs cannot tell what conditions the Counterfeit Products have been subjected to. Thus, Plaintiffs cannot vouch for the quality or ingredients used to manufacture Counterfeit Products, and consumers likewise cannot verify that the particular products they purchase meet with their high expectations for Plaintiffs' authentic ZIG-ZAG® and RAW® Smoking Papers.

78.    The packaging for Plaintiffs' ZIG-ZAG® and RAW® Smoking Papers states where the respective products are manufactured, which for RAW® products, is Alcoy, Spain, and which for ZIG-ZAG® Orange cigarette paper products, is France.

79.    Defendants' Counterfeit Products mimic the appearance of Plaintiffs' authentic ZIG-ZAG® and RAW® Smoking Papers, and thus the counterfeit packaging also states the respective counterfeit products are made in Alcoy, Spain, or France. Upon information and belief, Defendants' Counterfeit Products are manufactured in Asia, in China or India, outside of

Plaintiffs' care, control, and authorized manufacturing and distribution channels.

**Plaintiffs' Investigation and Defendants' Known Counterfeit Sales**

80.     In October and November 2018, Plaintiffs investigated counterfeit ZIG-ZAG®

and RAW® Smoking Papers sales in Florida, and Fort Lauderdale, Florida in particular.

81.     Based on reports received, Plaintiffs identified the Defendants as sellers of

counterfeit ZIG-ZAG® and RAW® Smoking Papers, and identified the Warehouse as

Defendants' primary location for buying, selling, and otherwise distributing Counterfeit

Products, and storing records related to same.

82.     Plaintiffs directed an investigator to make a series of controlled buys from

Defendants at the Warehouse.

83.     On October 9, 2018, Plaintiffs' investigator visited the Warehouse and bought

from Defendants: two (2) cartons of counterfeit ZIG-ZAG® Orange cigarette papers for the

below-market price of $31.99 per carton.

84.     On October 15, 2018, Plaintiffs' investigator returned to the Warehouse and

bought from Defendants: (a) two (2) cartons of counterfeit ZIG-ZAG® Orange cigarette papers

for the below-market price of $31.99 per carton; and (b) two (2) boxes of counterfeit RAW®

Cones for the below-market price of $29.99 per box.

85.     On October 22, 2018, Plaintiffs' investigator returned to the Warehouse and

bought from Defendants: (a) one (1) carton of counterfeit ZIG-ZAG® Orange cigarette papers

for the below-market price of $31.99 per carton; and (b) one (1) box of counterfeit RAW®

Cones for the below-market price of $29.99 per box.

86.     On October 25, 2018, Plaintiffs' investigator returned to the Warehouse and

bought from Defendants one (1) carton of counterfeit ZIG-ZAG® Orange cigarette papers for the

below-market price of $31.99 per carton.

87.     On October 31, 2018, Plaintiffs' investigator returned to the Warehouse and bought from Defendants two (2) cartons of counterfeit ZIG-ZAG® Orange cigarette papers for the below-market price of $31.99 per carton.

88.     On November 12, 2018, Plaintiffs' investigator returned to the Warehouse and bought from Defendants two (2) cartons of counterfeit ZIG-ZAG® Orange cigarette papers for the below-market price of $31.99 per carton.

89.     On November 28, 2018, Plaintiffs' investigator returned to the Warehouse and bought from Defendants two (2) cartons of counterfeit ZIG-ZAG® Orange cigarette papers for the below-market price of $31.99 per carton.

90.     On December 7, 2018, Plaintiffs' investigator returned to the Warehouse and bought from Defendants two (2) cartons of counterfeit ZIG-ZAG® Orange cigarette papers for the below-market price of $31.99 per carton.

91.     On December 12, 2018, Plaintiffs' investigator returned to the Warehouse and bought from Defendants one (1) carton of counterfeit ZIG-ZAG® Orange cigarette papers for the below-market price of $31.99 per carton.

92.     On January 4, 2019, Plaintiffs' investigator returned to the Warehouse and bought from Defendants (a) two (2) boxes of counterfeit RAW® Cones, and (b) four (4) cartons of counterfeit ZIG-ZAG® Orange, at below-market prices.

93.     Following the controlled buys described above (dated: October 9, 2018; October 15, 2018; October 22, 2018; October 25, 2018; October 31, 2018; November 12, 2018; November 28, 2018; December 7, 2018; December 12, 2018; and January 4, 2019) (together, "Controlled Buys"), Plaintiffs' investigators mailed all counterfeit ZIG-ZAG® Orange cigarette

papers to North Atlantic headquarters in Louisville, Kentucky, and mailed all counterfeit RAW® Cones to HBI's headquarters in Phoenix, Arizona. In each case, Plaintiffs' representatives inspected and analyzed the products, and confirmed their counterfeit status based on tell-tale indicators described above (*e.g.*, size and dimension differences, and quality differences).

94. Thus, Plaintiffs confirmed Defendants bought and sold, and are buying and selling, Counterfeit Products, namely, cartons of counterfeit ZIG-ZAG® Orange, and boxes of counterfeit RAW® Cones.

## **Defendants' Counterfeiting Is Intentional and Willful**

95. The Controlled Buys are just sales of Counterfeit Products by Defendants that Plaintiffs know about.

96. Plaintiffs' investigators are not Defendants' only customers of Counterfeit Products.

97. Defendants have sold Counterfeit Products, namely, counterfeit ZIG-ZAG® and RAW® Smoking Papers, to customers other than Plaintiffs' investigators during the Controlled Buys.

98. Extrapolating from the Controlled Buys, Plaintiffs believe Defendants' counterfeiting of ZIG-ZAG® and RAW® Smoking Papers is on a much larger scale.

99. Defendants are professional sellers of products including Smoking Papers.

100. At all relevant times, Defendants knew Plaintiffs were the exclusive sources and distributors of ZIG-ZAG® and RAW® Smoking Papers in the United States.

101. By definition, Defendants did not obtain the Counterfeit Products from Plaintiffs' or any other authorized source or direct account.

102. Upon information and belief, Defendants recognized the tell-tale counterfeit

22

indicators on the Counterfeit Products they bought, sold, or otherwise distributed (*e.g.*, size differences, color/saturation differences, and printing and paper quality differences).

103.    Upon information and belief, Defendants recognized that their purchase and sale prices for Counterfeit Products were far less than Plaintiffs' respective market prices, and that they were selling counterfeit ZIG-ZAG® and RAW® Smoking Papers at below-market prices that are too good to be true.

104.    When visiting the Warehouse, Plaintiffs' investigators noticed that Defendants hid the Counterfeit Products under the counter and in the Warehouse's back office. Plaintiffs' investigators asked Defendants' employees, John Does #1 through #3, why the Counterfeit Products were stored under the counter and/or in the Warehouse's back office. Defendants' employees, John Does #1 through #3, gave inconsistent answers, suggesting subjective knowledge that the Counterfeit Products are counterfeit (such as that the Counterfeit Products are small and people try to steal them, but also that there are no cameras under the counter or in the Warehouse's back office).

105.    Upon information and belief, Defendants stored Counterfeit Products under the counter and in the Warehouse's back office to prevent customers from analyzing them before purchase, and to conceal their counterfeit nature.

106.    Upon information and belief, Defendants are acting in concert to buy, sell, and otherwise distribute Counterfeit Products, and upon information and belief, other counterfeit ZIG-ZAG® and RAW® Smoking Papers.

107.    Upon information and belief, Defendants are trying to shield themselves from liability from their counterfeit transactions through the use of multiple corporate shells, operating out of the same Warehouse location.

108.   Upon information and belief, Defendants' purchase, sale, and other distribution of Counterfeit Products is with subjective knowledge of Plaintiffs' respective rights in and to the ZIG-ZAG® and RAW® Smoking Papers; of the Counterfeit Products' counterfeit status; and of the damage and harm caused by Counterfeit Products to Plaintiffs and in the marketplace.

**Damages and Irreparable Harm to Plaintiffs**

109.   As alleged above, Defendants' Counterfeit Products have distinct quality differences from Plaintiffs' authentic ZIG-ZAG® and RAW® Smoking Papers, namely, they are low quality and are not subjected to any known quality control standards.

110.   When consumers purchase Defendants' Counterfeit Products, they are less likely to think favorably of Plaintiffs than they would if they had purchased Plaintiffs' authentic ZIG-ZAG® and RAW® Smoking Papers.

111.   When a consumer has a negative smoking experience with Counterfeit Products, and wrongfully attributes defects in Counterfeit Products to Plaintiffs, the consumer may decide not to use Plaintiffs' authentic ZIG-ZAG® and RAW® Smoking Papers in the future and may switch to another Smoking Paper brand. If that happens, it may never be possible for Plaintiffs to regain the consumers' lost trust.

112.   Defendants' purchase, sale, and other distribution of Counterfeit Products thus deprives Plaintiffs of their absolute right to control the quality and relative safety of the products that appear to be sold under their respective RAW® and ZIG-ZAG® brands, and the RAW® Trademarks, RAW® Trade Dress, NAOC® and ZIG-ZAG® Trademarks, NAOC© Copyright, and ZIG-ZAG® Orange Trade Dress.

113.   As a direct/proximate result of the foregoing, Plaintiffs have suffered, and unless Defendants' conduct is enjoined by this Court, will continue to suffer, actual economic damages

in the form of lost sales, revenues, and profits, and irreparable harm to Plaintiffs' respective

brand value, reputations, and goodwill, for which Plaintiffs have no adequate legal remedy.

## FIRST CLAIM FOR RELIEF (ALL PLAINTIFFS)

## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

114.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as

though fully set forth herein.

115.    In violation 15 U.S.C. § 1114, Defendants, independently and in conspiracy with

one another, used in commerce, without Plaintiffs' consent, either a reproduction, counterfeit,

copy, or colorable imitation of one or more of the registered RAW® Trademarks, ZIG-ZAG®

Trademarks, and/or NAOC® Trademarks, on and in connection with the sale, offering for sale,

distribution, or advertising of counterfeit RAW® Smoking Papers, including but not limited to

counterfeit RAW® Cones, and counterfeit ZIG-ZAG® Smoking Papers, including but not

limited to counterfeit ZIG-ZAG® Orange, which is likely to cause confusion, or to cause

mistake, or to deceive consumers.

116.    Defendants' actions, constitute willful infringement of HBI's exclusive rights in

and to the RAW® Trademarks, and North Atlantic's exclusive rights in and to the ZIG-ZAG®

and NAOC® Trademarks, which are registered on the Principal Register, and which Plaintiffs

respectively own/have the exclusive right to use/enforce for Smoking Papers in the United

States.

117.    As a direct and proximate result of Defendants' willful misconduct, HBI has

suffered economic damages and irreparable harm to the value and goodwill associated with the

registered RAW® Trademarks, and North Atlantic has suffered economic damages and

irreparable harm to the value and goodwill associated with the ZIG-ZAG® and NAOC®

Trademarks, and irreparable harm to Plaintiffs' respective reputations in the industry.  Unless Defendants are restrained and enjoined from buying, selling, or otherwise distributing Counterfeit Products, or counterfeiting or infringing the RAW® Trademarks, ZIG-ZAG® Trademarks, and/or NAOC® Trademarks, Plaintiffs will continue to be economically damaged and irreparably harmed.

118.    As a direct and proximate result of Defendants' willful misconduct, Defendants have earned illicit profits, and Plaintiffs have suffered lost profits from lost sales, in amounts not yet known but to be determined at trial.

119.    Plaintiffs have no remedy at law that could compensate them for the continued, irreparable harm caused by Defendants' purchase, sale, and other distribution of Counterfeit Products, and counterfeiting and infringement of the RAW® Trademarks, ZIG-ZAG® Trademarks, and NAOC® Trademarks. Accordingly, Plaintiffs seek, and are entitled to, preliminary and permanent injunctive relief.

120.    Plaintiffs are also entitled to statutory damages, enhanced damages, and/or reasonable attorneys' fees, in amounts not yet known, but to be determined at trial.

### SECOND CLAIM FOR RELIEF (ALL PLAINTIFFS)

### FALSE DESIGNATION OF ORIGIN AND TRADEMARK/TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(a))

121.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as though fully set forth herein.

122.    In violation of 15 U.S.C. § 1125(a), Defendants, independently and in conspiracy with one another, and in connection with their purchase, sale, and other distribution of Counterfeit Products, used in commerce a slogan, trade dress, word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description

26

of fact, or false or misleading representation of fact, which was and is likely to cause confusion or to cause mistake, or to deceive consumers as to an affiliation, connection, or association with Plaintiffs.

123.   Without limitation, Defendants willfully sold Counterfeit Products bearing counterfeit and infringing versions of the RAW® Trademarks, RAW® Trade Dress, ZIG-ZAG® Trademarks, NAOC® Trademarks, and ZIG-ZAG® Orange Trade Dress, and infringed Plaintiffs' nationwide common-law rights therein.   Defendants also falsely designated the Counterfeit Products as originating/being distributed by Plaintiffs, when they are not, and by definition, could never be, because any Smoking Papers distributed by Plaintiffs could not be counterfeit.   Defendants also sold Counterfeit Products in counterfeit packaging that falsely states where the Counterfeit Products are made: Alcoy, Spain, for RAW® Cones, and France for ZIG-ZAG® Orange cigarette papers.

124.   As a direct and proximate result of Defendants' willful misconduct, Plaintiffs have suffered, and are suffering, economic damages and irreparable harm to the value and goodwill associated with their common-law trademarks and trade dresses, including the RAW® Trademarks, RAW® Trade Dress, ZIG-ZAG® Trademarks, NAOC® Trademarks, and ZIG-ZAG® Orange Trade Dress, and associated reputations, brand values, and goodwill.

125.   Unless Defendants are restrained and enjoined from further infringement of the RAW® Trademarks, RAW® Trade Dress, ZIG-ZAG® Trademarks, NAOC® Trademarks, and ZIG-ZAG® Orange Trade Dress, and from falsely designating the Counterfeit Products' origin as either Alcoy, Spain, or France, with Plaintiffs, Plaintiffs will continue to be economically damaged and irreparably harmed.

126.   Plaintiffs have no adequate remedy at law that could compensate them for the

continued and irreparable harm they have suffered, and will continue to suffer, if Defendants' purchase, sale, and other distribution of Counterfeit Products is allowed to continue.   Thus, Plaintiffs seek, and are entitled to, preliminary and permanent injunctive relief.

127.   As a direct and proximate result of Defendants' willful misconduct, Defendants have earned illicit profits, and Plaintiffs have suffered lost profits from lost sales, in amounts not yet known but to be determined at trial.

128.   Plaintiffs are entitled to damages, trebled damages, and/or reasonable attorneys' fees, in amounts not yet known, but to be determined at trial.

**THIRD CLAIM FOR RELIEF (NAOC AND NTC ONLY)**

**FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)**

129.   North Atlantic repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

130.   Currently, and at all relevant times, North Atlantic has been the sole owner of all rights, title, and interest in and to the NAOC© Copyright.

131.   North Atlantic has the exclusive right to, among other things, reproduce, distribute, publicly display, and create derivative works from the NAOC© Copyright, which it solely owns.

132.   North Atlantic registered its claim to the copyright it the NAOC© Copyright with the U.S. Copyright Office.   To wit, North Atlantic possesses a copyright registration certificate for the NAOC© Copyright dated October 11, 2002.

133.   Defendants have directly infringed the NAOC© Copyright by unlawfully reproducing, transmitting, distributing, publicly displaying, or creating derivative works based on the NAOC© Copyright, in violation of North Atlantic's exclusive rights under 17 U.S.C. § 106.

134.   The foregoing actions of the Defendants in violation of North Atlantic's rights have been willful and intentional, executed with full knowledge of North Atlantic's exclusive rights in the NAOC© Copyright, and in conscious disregard of those rights.

135.   North Atlantic is entitled to recover from the Defendants the profits that the Defendants obtained through infringements of the NAOC© Copyright, as well as North Atlantic's damages from those infringements, or, at North Atlantic's election, statutory damages pursuant to 17 U.S.C. § 504.

136.   North Atlantic is also entitled to recovery costs and attorneys' fees from Defendants pursuant to 17 U.S.C. § 505.

137.   Defendants' willful infringement of North Atlantic's NAOC© Copyright has caused, and unless enjoined by this Court, will continue to cause, irreparable injury to North Atlantic, which is not fully compensable in monetary damages.  North Atlantic is therefore entitled to preliminary and permanent injunctions prohibition the Defendants from further infringing North Atlantic's NAOC© Copyright.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.   For judgment for NAOC and NTC that:

    a.   All Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    b.   All Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (unfair competition, false designation of origin, common-law trademark and trade dress infringement);

    c.   All Defendants have violated the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*; and

    d.   In all instances, Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of North Atlantic's lawfully protected rights.

2.    For judgment for HBI that:

    a.   All Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    b.   All Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (unfair competition, false designation of origin, common-law trademark and trade dress infringement); and

    c.   In all instances, Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of HBI's lawfully protected rights.

3.    For an order preliminarily and permanently enjoining Defendants, their agents, their servants, their employees, and their officers, and all those acting in concert or participation with them, who receive actual notice by personal service or otherwise, pending the final hearing and determination of this action, from directly or indirectly, anywhere in the world:

    a.   Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing ZIG-ZAG® cigarette paper products, including but not limited to ZIG-ZAG® Orange, or any cigarette paper products bearing:

        i.   Infringing or counterfeit versions of the ZIG-ZAG® Trademarks, the NAOC® Trademarks, the NAOC© Copyright, and/or the ZIG-ZAG® Orange Trade Dress, which appear alone or in combination on all authentic cartons and booklets of ZIG-ZIG® Orange distributed by North Atlantic in the United States; and/or

ii. The false statement that such products are "Distributed by North Atlantic Operating Company, Inc.", or otherwise under North Atlantic's control or supervision, when they are not;

b. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing RAW-brand products, including but not limited to RAW® Cones, or any rolling papers, rolling trays, or other smoking products or accessories bearing:

i. Infringing or counterfeit versions of the RAW® Trademarks or the RAW® Trade Dress, which devices appear alone or in combination on authentic packs and boxes of RAW® rolling papers, including RAW® Cones, distributed by HBI in the United States; or

ii. The false representation that such products are distributed by HBI or otherwise under HBI's control or supervision, or are "Made in Alcoy, Spain," when they are not;

c. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any purported North Atlantic products that are not actually produced, imported, or distributed under North Atlantic's control or supervision, or approved for sale in the United States by North Atlantic in connection with the ZIG-ZAG® Trademarks, the NAOC® Trademarks, the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress;

d. Manufacturing, making, buying, purchasing, importing, shipping, delivering,

advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any purported HBI or RAW-brand products that are not actually produced, imported, or distributed under HBI's control or supervision, or approved for sale in the United States by HBI in connection with the RAW® Trademarks or RAW® Trade Dress;

e. Committing acts calculated to cause purchasers to believe that counterfeit or infringing ZIG-ZAG® brand products originate with North Atlantic, when they do not;

f. Committing acts calculated to cause purchasers to believe that counterfeit or infringing RAW-brand products originate with HBI when they do not;

g. In any way infringing or damaging the ZIG-ZAG® Trademarks, NAOC® Trademarks, NAOC© Copyright, and/or ZIG-ZAG® Orange Trade Dress, or the value or goodwill associated therewith;

h. In any way infringing or damaging the RAW® Trademarks and/or RAW® Trade Dress, or the value or goodwill associated therewith;

i. Attempting, causing, or assisting in any of the above-described acts, including but not limited to enabling others in the above-described acts, or passing on information to others to allow them to do so; and

j. Forming or causing to be formed any corporation or other entity that engages in the above-described acts.

4. For an order requiring Defendants to cooperate with Plaintiffs in good faith in their investigation of counterfeit sales at their retail and wholesale establishments, including, without limitation by:

    a.  Permitting Plaintiffs' representatives or their designees to conduct inspections of Defendants' inventories of purported RAW-brand products or ZIG-ZAG-brand products to determine if any such products are counterfeit or otherwise infringing, and permitting Plaintiffs' representatives to obtain and retain possession of any such counterfeit products;

    b.  Responding to reasonable requests for information about Defendants' source(s) of RAW-brand products and/or ZIG-ZAG-brand products; and

    c.  Cooperating with Plaintiffs' representatives or their designees in their investigations of any source(s) of counterfeit RAW-brand products and/or ZIG-ZAG-brand products.

5.  For an order:

    a.  Requiring Defendants to account for and pay over to Plaintiffs all profits derived from their wrongful misconduct to the full extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

    b.  Requiring Defendants to account for and pay to Plaintiffs enhanced damages resulting from their wrongful misconduct to the full extent provided for by Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b);

    c.  Awarding Plaintiffs damages, or statutory damages in an amount not less than $2 million ($2,000,000) per trademark pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), or in the alternative $200,000 per trademark pursuant to 15 U.S.C. § 1117(c)(1);

    d.  Requiring Defendants to account for and pay all profits derived from their wrongful misconduct to North Atlantic, to the full extent provided for by the

Copyright Act, 17 U.S.C. § 504;

e. Awarding damages to North Atlantic, or statutory damages in an amount not less than $150,000 per infringement of the NAOC© Copyright which occurred after the filing of its copyright application against each of the Defendants separately and jointly;

f. Awarding any and all other damages permitted by the Lanham Act, including compensation for damage to the value of North Atlantic's and HBI's trademarks and trade dress, their reputation among U.S. consumers, their goodwill, and other damages in an amount not yet known, but to be proved at trial;

g. Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and investigation costs; and

h. Awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Date: January 23, 2019

Respectfully submitted,

BBK Tobacco & Foods, LLP, d.b.a. HBI International; North Atlantic Operating Company, Inc.; and National Tobacco Company, Inc.

By: _Karen L. Stetson_

Karen L. Stetson, Esq. (FBN 742937)
Karen.stetson@gray-robinson.com
GrayRobinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Tel.: (305) 416-6887; Fax: (305) 416-6887

Marcella Ballard, Esq. (*Pro Hac Vice* pending)
MBallard@Venable.com
Victoria R. Danta Esq. (*Pro Hac Vice* pending)

VRDanta@Venable.com
Venable LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Tel.: (212) 370-6289; Fax: (212) 307-5598