UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60200-CIV-ALTMAN/Hunt

NORTH ATLANTIC OPERATING
COMPANY, INC., *et al.*,

    Plaintiffs,

v.

HAMMAD ENTERPRISES, INC., *et al.*,

    Defendants.

## OMNIBUS ORDER

**THIS MATTER** comes before the Court on: (1) the Defendants' Motion to Strike Jury Demand as to Counts I and II of the Complaint [ECF No. 169]; (2) the Defendants' Motion for Summary Judgment [ECF No. 170]; and (3) the Plaintiffs' Motion to Strike Paragraphs Contained in the Affidavit of Amjad Hammad in Support of Defendants' Motion for Summary Judgment [ECF No. 183]. All three motions are fully briefed.

## THE FACTS[1]

The Plaintiffs manufacture and sell certain trademarked cigarette paper products, which are registered with the U.S. Patent and Trademark Office. *See* Plaintiffs' Counterstatement of Material Facts ("Plaintiffs' 56.1") [ECF No. 181 ¶¶ 54-55]. These products include cigarette rolling papers marked with the ZIG-ZAG, RAW, and NAOC trade dresses. *Id.* ¶¶ 53-65. Between October 2018 and January 2019, the Plaintiffs allege that their private investigators made ten different "controlled buys" of products bearing these marks at a warehouse (the

---

[1] Despite over sixty combined pages of "material facts" briefing, the parties do not appear to agree that there are any genuinely undisputed material facts in the case. Given this intransigence,

"Warehouse") controlled by the Defendants, Hammad Enterprises, Inc. and Amjad Hammad. *Id.* ¶¶ 2, 74-76. After inspecting the goods they had purchased at each of these controlled buys, the Plaintiffs "determined," with the help of a third-party consultant, that the cigarette rolling papers they had bought were counterfeit. *Id.*

Amjad Hammad is the sole owner of Hammad Enterprises, Inc. *See* Defendants' Statement of Undisputed Facts ("Defendants' 56.1") [ECF No. 171 ¶ 4]; *see also* Plaintiffs' 56.1 ¶ 4. According to the Defendants, Hammad operated, through October 2014, a business known as "Hammad Wholesale," located at 129 NW 25th Terrace, Bay-C Warehouse, Fort Lauderdale, Florida 33311 (the aforementioned "Warehouse"). *See* Defendants' 56.1 ¶¶ 5-6. The Defendants contend that, on October 10, 2014, Hammad sold "Hammad Wholesale" to an Eduardo Trenova—who, on November 25, 2014, assigned his rights in Hammad Wholesale to a company called FL 5019 LLC. *Id.* ¶¶ 6-7. The Plaintiffs counter that Hammad has continued to run his business out of the Warehouse, and that he uses FL 5019 LLC as a "vehicle for counterfeiting." Plaintiffs' 56.1 ¶ 52. In response, the Defendants insist that Hammad only leases the Warehouse to entities like FL 5019 LLC, that he no longer transacts any business at the Warehouse, and that he did not know of "any alleged illegal activities [as] described in the Complaint and/or which took place at [the Warehouse]." Defendants' 56.1 ¶¶ 8-20.

Notably, the Plaintiffs have also introduced evidence that, at the time of each controlled sale, the following facts were either true or took place during the purchase: (1) Hammad Enterprises, Inc. listed, as its "main address" with Florida regulators, the Warehouse's address; (2) Hammad Enterprises, Inc. received its mail at the Warehouse; (3) the individuals working at the Warehouse "carry and distribute [business] cards with 'Hammad Enterprises, Inc.' listed on

---

the Court will briefly summarize the salient facts in the light most favorable to the non-moving parties—the Plaintiffs.

the card in three places"; (4) trucks outside the Warehouse "prominently displayed 'Hammad Enterprises, Inc.'" on their sides; (5) all of the receipts the Plaintiffs obtained contained the following statement: "Hammad Enterprises, Inc. hereby retains a security interest in the goods described above until the unpaid balance of such goods is fully paid. It is expressly agreed and understood that, in the case of default, Hammad Enterprises, Inc. shall be entitled to possession of the goods and/or the entire unpaid balance shall become due and payable immediately"; and (6) some of the materials seized from the Warehouse, including inventory sheets and purchase invoices, are labeled with the name "Hammad Enterprises." Plaintiffs' 56.1 ¶ 9.

The Plaintiffs' Complaint asserts three claims against the Defendants: (1) Federal Trademark Infringement under 15 U.S.C. § 1114; (2) False Designation of Origin and Trademark/Trademark Dress Infringement under 15 U.S.C. § 1125(a); and (3) Federal Copyright Infringement under 17 U.S.C. § 101 *et seq.*[2]

Having resolved their claims against Chilogistics LLC and FL 5019 LLC—who, before entering into settlements with the Plaintiffs, were likewise defendants in this case—the Plaintiffs now seek to vindicate their trademark and copyright claims at trial. Standing in their way are: (1) the Defendants' Motion for Summary Judgment, which argues that the Defendants were not responsible for selling the counterfeit products at issue in this case; and (2) the Defendants' Motion to Strike the Plaintiffs' jury demand.

## THE LAW

The legal framework that governs the Defendants' Motion for Summary Judgment is well-settled. Put simply, summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v.*

---

[2] Only North Atlantic Operating Company, Inc., and National Tobacco Company, L.P., assert this third claim.

3

*Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). In determining whether to grant summary judgment, the Court must consider "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable factfinder to rule for the non-moving party. *Id.*

At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See, e.g., Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence that a genuine issue of material fact precludes summary judgment. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); FED. R. CIV. P. 56(e).

"If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). Notably, assessments of credibility—no less than the weighing of evidence—are fact questions not susceptible of disposition at summary judgment. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012). The Court must analyze the record as a whole—and not just the evidence the parties have singled out for consideration. *See Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1570 (11th Cir. 1987). If there are any genuine issues of

4

material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

## ANALYSIS

I.   **The Defendants' Motion to Strike Jury Demand as to Counts I and II [ECF No. 169]**

As the Defendants see it, the Plaintiffs' jury demand should be stricken because the Plaintiffs have adduced no expert report—or, so the Defendants say, any other competent evidence—to quantify their claims for actual damages. Motion to Strike at 2. And, the Defendants continue, without their claims for actual damages, the Plaintiffs assert nothing but equitable claims—as to which the Plaintiffs have no right to a jury trial. *Id.*

In their response ("MTS Response"), the Plaintiffs note that the Lanham Act does not require them to hire an expert to establish actual damages—and, in any event, that they have provided evidence of actual damages in the form of "royalties, goodwill, consumer complaints, advertising expenditures, and lost revenue per product." MTS Response at 2 [ECF No. 184]. In their Reply ("MTS Reply") [ECF No. 185], the Defendants do not disagree that the Plaintiffs have introduced, during discovery, "licensing and distribution agreements and . . . [reasonable royalty] calculations." MTS Reply at 2-5. Instead, they argue that these documents are "uncorroborated," "self-serving," and too speculative to support the Plaintiffs' claimed damages. *Id*.

The Defendants are, for two reasons, mistaken.

*First*, as this court has explained, the Lanham Act "demands neither empirical quantification nor expert testimony to support a monetary award of actual damages; many sources can provide the requisite information upon which a reasonable jury may calculate damages." *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 WL 8404330, at *7 (S.D. Fla. Nov.

5

20, 2017) (citing *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012)). In other words, the Plaintiffs do not, as the Defendants suggest, need an expert to quantify their actual damages.

*Second*, the Plaintiffs may, in their efforts to calculate actual damages before the jury, rely upon their "license and distribution agreements, reasonable royalty calculations, evidence of goodwill and reputation, evidence of advertising expenditures, evidence of lost revenue per product, and evidence of consumer complaints." MTS Response at 4. In fact, lost royalties are often the "proper measure of damages" in trademark misuse cases. *See Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) (citations omitted). And, notably, a jury may, in computing the extent of the plaintiff's actual damages, assess the harm the defendant's conduct may have caused to the plaintiff's goodwill by considering "a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts." *Vivint, Inc.*, 2017 WL 8404330, at *7.

For all these reasons, the Defendants' Motion to Strike Jury Demand as to Counts I and II is **DENIED**.

## II.    The Defendants' Motion for Summary Judgment [ECF No. 170]

According to the Defendants' Motion for Summary Judgment ("Defendants' MSJ"), the "Plaintiffs sued the wrong parties!!" Defendants' MSJ at 2. This entire case, the Defendants insist, is just a simple misunderstanding: Hammad, they say, does not own or operate the Warehouse—nor has he since 2014. *Id.* at 3. That the purchasers of the "Hammad Wholesale" business "failed to remove the Hammad Enterprises name from the side of the trucks, from invoices and sales records, and from business cards" more than four years after the supposed sale was nothing more than an "oversight"—something the Defendants "never even thought about." *Id.* Indeed, the Defendants do not seem to disagree that the sale of counterfeit goods at the

6

Warehouse—if it transpired exactly as the Plaintiffs have described—would constitute a violation of the relevant federal statutes. Instead, the Defendants simply deny any involvement in the sale of the counterfeit goods. *See* Defendants' MSJ at 10-12.

Unfortunately for the Defendants, the argument they have raised in their Motion for Summary Judgment constitutes nothing less than a genuine dispute about a material fact: whether the Defendants committed the bad acts alleged in the Complaint. And, taking all inferences in the Plaintiffs' favor, *see Allen*, 121 F.3d at 646, the Plaintiffs have adduced a rather compelling evidentiary display, from which a reasonable factfinder could conclude that the Defendants—and not some other malevolent actor—effectuated the counterfeit sales at issue in the case. This evidence includes, among many other things, invoices from the controlled sales—which strongly suggest that the Defendants had a security interest in the counterfeit goods; Warehouse employee business cards which referenced "Hammad Enterprises, Inc."; and even testimony that several trucks parked outside the Warehouse bore the "Hammad Enterprises, Inc." logo on their sides. MSJ Response at 10.

Because, in short, the parties' genuine dispute about the extent of the Defendants' involvement in the counterfeit sales is plainly one that concerns a material fact, the Defendants' Motion for Summary Judgment is **DENIED**.

### III. The Plaintiffs' Motion to Strike Paragraphs Contained in the Affidavit of Amjad Hammad [ECF No. 183]

The Plaintiffs ask the Court to strike certain portions of the affidavit Hammad attached to his Motion for Summary Judgment because the allegedly offending paragraphs: (1) conflict with the evidentiary record; (2) are not based on Hammad's personal knowledge; and (3) are otherwise conclusory. *See generally* Motion to Strike Affidavit [ECF No. 183]. Because the Court adjudicated the Defendants' Motion for Summary Judgment without relying on the

paragraphs the Plaintiffs seek to strike, the Court will **DENY** the Plaintiffs' motion **without prejudice**. The Plaintiffs may re-raise this motion if the Defendants attempt to introduce the affidavit at trial—though, given that Hammad will be present to testify at the trial, that affidavit is not likely to be admissible in any event.

Accordingly, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. The Defendants' Motion to Strike Jury Demand as to Counts I and II of the Complaint [ECF No. 169] is **DENIED**.

2. The Defendants' Motion for Summary Judgment [ECF No. 170] is **DENIED**.

3. The Plaintiffs' Motion to Strike Paragraphs Contained in the Affidavit of Amjad Hammad in Support of the Defendants' Motion for Summary Judgment is **DENIED without prejudice**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 15th day of January 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record